THE TRUSTEES OF UNION COLLEGE IN THE TOWN OF SCHENECTADY IN THE STATE OF NEW YORK, Respondents, *v.* DENNIS COUGHLIN and Others, as the School Trustees of the First Ward of Long Island City, Appellants.

*Long Island City — when the board of education is liable on a contract entered into by the school trustees of a ward.*

In an action brought against the school trustees of the first ward of Long Island City to recover for unpaid rent under a lease of certain land and buildings and for the use and occupation of said premises for one year following the termination of the lease, and for damages resulting from the breach of a covenant in said lease whereby the lessees agreed to surrender the premises at the expiration of the term in as good condition as reasonable use and wear thereof would permit; it appeared that the lease was under seal and was executed by the plaintiffs and the defendants' predecessors in office and that the board of education of Long Island City consented to the execution of the lease.

*Held,* that while the contract sued upon was, with the assent of the board of education, properly made in the name of the ward school trustees, still it was, in law, the contract of the board of education, such board being by the charter of Long Island City (Chap. 461 of the Laws of 1871) responsible for all expenses of public instruction within said city, and that the action should have been brought against the board of education, and could not be maintained against the school trustees of the ward.

APPEAL by the defendants, Dennis Coughlin and others, as the school trustees of the first ward of Long Island City, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Queens on the 19th day of November, 1894, upon the report of a referee.

*William E. Stewart,* for the appellants.

*Chanler, Maxwell & Philip,* for the respondents.

BROWN, P. J.:

The plaintiffs have recovered a judgment against the defendants upon three separate causes of action.

*First.* For unpaid rent upon a lease for a lot of land and buildings thereon used for school purposes.

*Second.* For the use and occupation of said premises for one year following the termination of said lease, and

*Third.* For damages for breach of a covenant in said lease, whereby the lessees agreed to surrender the demised premises at the expiration of the term in as good condition as reasonable use and wear thereof would permit, damages by the elements excepted.

The lease was under seal and was executed by and between the plaintiffs and the defendants' predecessors in office (the board of education of Long Island City consenting to the same), and bears date November 1, 1876, and was for the term of fifteen years at an annual rent of $2,347, the lessees agreeing to pay taxes and water rates as they became due.

On May 1, 1877, by a further agreement, the lessees, in consideration of the lessor making certain alterations in the building, agreed to pay sixty-six dollars additional rent for each year of the unexpired term.

The provisions of the charter of the city (Chap. 461, Laws of 1871), relating to public instruction therein, are not very intelligible, and it is difficult to determine with entire satisfaction the powers of the several officers. It provides that each ward of the city shall be a school district, and that there shall be elected therein three trustees, who hold office for three years, one of whom shall be elected each year. The mayor of the city is authorized to appoint a commissioner of public instruction in each ward, who serve as school commissioners for their respective wards. These commissioners constitute the board of education for the city. The statute enumerates the powers of the board of education and of the school trustees.

The board of education is declared to be a corporation for the purposes of the act, with power to sue and be sued, but the title to all property of the schools, real and personal, is declared to be vested in the corporation of Long Island City.

It is made the duty of the school trustees to manage and conduct the schools of their respective wards, and to make repairs, alterations and additions in and to the school premises, but they are forbidden, without the written authorization of the board of education, to expend more than twenty-five dollars a month.

Sections 13 and 14 of chapter 2 of title 9 of the charter are as follows:

" SEC. 13. The board of education may authorize the erection of a new public school house, upon the written application of a

majority of the trustees for the ward. It shall be the duty of the board of education to decide finally upon every such application within thirty days after the same shall be presented to it."

" SEC. 14. Upon a decision favorable to the establishment of a school or schools in any of the wards of said city, it shall be lawful for the school officers of said ward to proceed to organize one or more schools, such as may be authorized by the board of education, and procure a school house by purchasing or hiring the same; * * * and the expense of establishing and organizing any school, as above mentioned, shall be paid out of the revenues levied, and raised pursuant to the provisions of this act."

The testimony is that the demised premises had been used as a school by the city for many years prior to the date of the lease, and in April, 1876, the board of education appointed a committee to act with the trustees of the ward in reference to improved school accommodations for the ward, and on May twenty-third the board adopted a resolution that the total annual rent for that ward should not exceed $3,000. Negotiations appear to have been had with the plaintiffs in reference to improving the school building, with the result that a resolution was finally unanimously adopted that the commissioner and trustees of the ward were empowered to complete the negotiations on the basis of ten per cent upon the outlay to be made by plaintiffs in addition to $1,400 annual rent then being paid for the buildings, and thereafter the lease in suit was executed.

In my judgment this action cannot be maintained against the defendants. The case in this respect is not analogous to an action against school trustees under the general law. Such trustees are *quasi* corporations, and hold the title to all property of the district, and there is no other body that represents officially the school district which could be sued upon a claim against it. Moreover, the statute authorizes the school district meeting to vote a tax to pay judgments recovered against the trustees, and in case the inhabitants neglect or refuse to vote such tax, provision is made whereby the trustees are empowered to levy it upon the district. Thus, plain provisions of law are made whereby payment of a judgment against school trustees can be enforced. But this is not so in the case before us. The city charter does not contemplate a meeting of the inhabitants of the ward for school purposes at all, and the residents

of the ward have no duties or powers such as exist in the ordinary school district. No separate tax can be levied upon the wards and there is no separate fund out of which the expenses of the ward schools are to be paid. The ward trustees have no power given them to raise any money whatever, and there is no provision of law whereby, by proceedings against them, payment of a judgment against them can be enforced. They are not declared to be a corporation and are not vested with the title to any of the school property. The board of education is, by the charter, made the responsible body for all expenses of public instruction within the city. For educational purposes it is declared to be a corporation and is charged with the management and control of the schools. Its members are not servants or agents of the city, but public officers exercising such powers as are prescribed by statute, and the city is not liable for its acts. (*Ham* v. *The Mayor*, 70 N. Y. 459.)

To it the ward trustees must annually report. It may remove the trustees from office, establish new schools, employ and discharge teachers, designate their duties and fix their salaries, furnish supplies for the schools and school buildings, and no expense in excess of twenty-five dollars per month can be paid by the trustees without its written authorization. The money necessary to meet the expenses of public instruction in the city must be raised by the common council upon the certificate of the board by a tax on the property within the city. The amount necessary for each school is apportioned to it by the board, and no expenses can be paid by the ward trustees except upon the audit of the commissioner for such ward, and the money can be drawn from the treasury only upon drafts of the board signed by its president and countersigned by the clerk and the commissioner for the ward for which the money is to be paid. These provisions show the controlling character of the board of education over all matters relating to the public instruction within the city, and while I am inclined to the opinion that the contract sued upon was, with the assent of the board of education, properly made in the name of the ward trustees, I think it was in law, and must be treated as, the contract of the board of education. Certainly that body was the only one against whom it could be enforced, and in an action upon the contract the board has a clear right to be heard. The whole responsibility from the inception of the contract to the

final payment of the rent rests upon that body. But if an action can be sustained against the ward trustees, the right to a hearing would be denied to the board; and, as the judgment recovered against the trustees would be conclusive as to the plaintiffs' right to recover, its payment might be enforced by mandamus against the board, and it would be denied a hearing upon all questions involved in the judgment.

We are of the opinion that the ward trustees are officers charged solely with the duty of supervising the ward schools. They are a sort of an adjunct to the board of education. They have no independent power to contract except as to small amounts, and are not liable to be sued for the expenses of the schools. All contracts in reference to the public instruction within the city lawfully made, and debts and liabilities lawfully incurred, are the contracts, debts and liabilities of the board of education, which body, in its corporate capacity, is liable therefor.

Our conclusion is that this action should have been brought against the board of education, and that it cannot be maintained against the defendants. We, therefore, refrain from expressing any opinion upon the merits of the controversy.

The judgment must be reversed and the complaint dismissed.

PRATT, J., concurred; DYKMAN, J., not voting.

Judgment reversed and complaint dismissed, without costs.